**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| EXEGI PHARMA, LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VSL PHARMACEUTICALS, INC., | ) | Civil Action No. 19-cv-02479-LKG |
| | ) | |
| Defendant/Counterclaim Plaintiff, | ) | Dated:  July 24, 2026 |
| | ) | |
| v. | ) | |
| | ) | |
| CLAUDIO DE SIMONE, | ) | |
| | ) | |
| Third-Party/Counterclaim | ) | |
| Defendant. | ) | |
| | ) | |

<u>**MEMORANDUM OPINION**</u>

## I.   INTRODUCTION

In this civil action, the Plaintiff/Counterclaim Defendant, ExeGi Pharma, LLC ("ExeGi"), brings claims against the Defendant/Counterclaim Plaintiff, VSL Pharmaceuticals, Inc. ("VSL"), for a declaratory judgment, pursuant to 28 U.S.C. § 2201, tortious interference with business relationships and unfair competition, arising from certain letters that VSL's litigation counsel sent to ExeGi's manufacturers and distributors.  ECF No. 1.  VSL also brings a counterclaim against ExeGi and Third-Party/Counterclaim Defendant, Professor Claudio De Simone (ExeGi and Professor De Simone collectively referred to herein as "the De Simone Parties"), for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), arising from certain statements that the De Simone Parties' made in connection with the marketing of its "Visbiome" probiotic product.  ECF No. 16.

The parties have filed several motions that are pending before the Court.  First, the De Simone Parties have moved to exclude the opinions of two of VSL's expert witnesses, Dr. Rodolphe Barrangou and Dr. Ronald Goodstein, pursuant to Federal Rule of Evidence 702. ECF Nos. 101 and 104.  Second VSL has moved to exclude the expert testimony of the De

Simone Parties' expert witness, Marc Tewey.  ECF No. 116.

In addition, the De Simone Parties have filed a motion for summary judgment on ExeGi's declaratory judgment claim and VSL's remaining counterclaim, pursuant to Fed. R. Civ. P. 56(a).  ECF No. 105.  VSL has also filed a motion for summary judgment on ExeGi's tortious interference and unfair competition claims, pursuant to Fed. R. Civ. P. 56.  ECF No. 120. Lastly, the De Simone Parties have filed a motion for sanctions, pursuant to Fed. R. Civ. P. 11. ECF No. 102.  These motions are fully briefed.  ECF Nos. 101, 102, 104, 105, 116, 117, 118, 119, 120, 124, 125, 127, 128, 130 and 131.  No hearing is necessary to resolve the motions. *See* L.R. 105.6 (D. Md. 2025).

For the reasons that follow, the Court:  (1) **DENIES** the DeSimone Parties' motion to exclude the opinions of Dr. Barrangou (ECF No. 101); (2) **DENIES** the De Simone Parties' motion to exclude the opinions of Dr. Goodstein (ECF No. 104); (3) **DENIES** VSL's motion to exclude the opinions of Mr. Tewey (ECF No. 116); (4) **GRANTS-in-PART** and **DENIES-in-PART** the DeSimone Parties' motion for summary judgment (ECF No. 105) and **ENTERS JUDGMENT** in favor of ExeGi on Count I of the complaint; (5) **GRANTS-in-PART** and **DENIES-in-PART** VSL's motion for summary judgment as (ECF No. 120) and **ENTERS JUDGMENT** in favor of VSL on Counts II and III of the complaint; and (6) **DENIES** the De Simone Parties' motion for sanctions (ECF No. 102).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    Factual Background

This civil litigation involves a long-standing dispute among the parties related to the creation of an eight-strain, high-potency probiotic formulation and their competition to market this product.  ECF Nos. 1 and 16.  In this case, ExeGi brings claims for a declaratory judgment, tortious interference with business relationships and unfair competition against VSL, arising from certain letters that VSL's litigation counsel sent to ExeGi's manufacturers and

---

[1] The facts recited in this memorandum opinion are taken from the complaint (ECF No. 1); VSL's amended counterclaim (ECF No. 16); the De Simone Parties' motion for summary judgment (ECF No. 105) and the memorandum in support thereof (ECF No. 105-1); the joint statement of undisputed facts (ECF No. 105-3); VSL's motion for summary judgment (ECF No. 120) and the memorandum in support thereof (ECF No. 120-1); VSL's statement of undisputed facts (ECF No. 120-2); the parties' respective responses in opposition thereto (ECF Nos. 118, 119 and 128); the parties' respective reply briefs (ECF Nos. 124, 125, 127, 130 and 131); and the parties' motions to exclude expert testimony, the memoranda in support thereof, and the oppositions thereto (ECF Nos. 101, 104 and 116).

distributors.  ECF No. 1.  As relief, ExeGi seeks a declaratory judgment, preliminary and permanent injunctive relief, and to recover monetary damages and attorney's fees from VSL. *Id.* at Prayer for Relief.

VSL also asserts a counterclaim against ExeGi and Professor De Simone for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), arising from certain statements that the De Simone Parties made in connection with the marketing the "Visbiome" probiotic product.  ECF No. 16.  As relief, VSL seeks certain injunctive relief and to recover monetary damages and attorney fees from the De Simone Parties.  *Id.* at Prayer for Relief.

The Parties

ExeGi is a limited liability company that is organized under the laws of New York, and its principal place of business is located in Rockville, Maryland.  ECF No. 1 at ¶ 19.

VSL is a corporation organized under the laws of Delaware, with its principal place of business located in Herndon, Virginia.  *Id.* at ¶ 20.

Professor De Simone is a physician and scientist, who served as the chief executive officer and a member of the board of directors of VSL.  *Id.* at ¶ 3.

VSL#3 And Visbiome

As background, during the 1980s and 1990s, Professor De Simone conducted research into the clinical use of strains of bacteria to treat symptoms associated with irritable bowel syndrome and other diseases.  *Id.* at ¶ 26.  His work resulted in the synthesis of several therapeutic and dietary formulations containing live bacteria cultures that are known as "probiotics."  *Id*. Professor De Simone obtained several patents and other intellectual property rights for his formulation, including for the probiotic formulation for the eight-strain probiotic mix known as the "De Simone Formulation."  *Id*.

Professor De Simone joined with Italian pharmaceutical conglomerate Cavazzas to form VSL.  *Id*. at ¶ 27.  In 2002, Professor DeSimone licensed his patents for the De Simone Formulation to VSL and this product was sold in the United States under the name "VSL#3."  *Id*. at ¶ 28.

In 2011, Professor De Simone caused samples of the eight bacterial strains comprising the De Simone Formulation to be deposited with the Leibniz Institute DSMZ-German Collection of Microorganisms and Cell Cultures GmbH ("DSMZ"), which is a German depository for strains and microorganisms (the "Deposited Material").  *Id.* at ¶¶ 8, 34–35.  DSMZ assigned a DSM

3

Code to each deposited strain. *Id.* The parties agree that DSMZ is a depository for the storage of strains and microorganisms, and not a depository for strains for industrial production. ECF No. 105-3 at ¶ 16. The parties also agree that, upon receipt of a deposit, DSMZ assigns each deposit a unique alphanumeric designation, beginning with the letters "DSM" and followed by four numbers (the "DSM Codes"). *Id.* at ¶ 17.

The relationship between Professor De Simone and VSL later soured, over an alleged plan to change the composition of VSL#3, and Professor De Simone resigned from VSL in or around 2015. ECF No. 1 at ¶¶ 31–33. Thereafter, Professor De Simone instructed the manufacturer of VSL#3, Danisco, to "cut off" VSL's access to Danisco-made VSL#3. *Id.* at ¶ 33.

In 2015, Professor DeSimone granted an exclusive license to ExeGi to market and sell the De Simone Formulation, and ExeGi began marketing this product under the name "Visbiome" in February 2016. *Id.* at ¶ 34. ExeGi also incorporated the DSM Codes assigned by the DMSZ on Visbiome's packaging and packaging inserts, alongside the genus and species name for each corresponding bacteria strain. *Id.* at ¶¶ 8, 35 and 37.

It is undisputed that Visbiome's packaging, website and promotional materials have referenced the DSM Codes since 2016. ECF No. 105-3 at ¶ 20. It is also undisputed that Visbiome has never been manufactured with the Deposited Material at DSMZ. *Id.* at ¶ 18. The parties also agree that Visbiome contains all eight of the bacterial strains, by genus and species, listed on Visbiome's packaging. *Id.* at ¶ 19. But, the parties disagree about whether the Deposited Material matches the strains listed on Visbiome's packaging. In this regard, VSL contends that testing of the DSMZ deposits reveals that at least three of the deposited strains do not match those listed on Visbiome's packaging. ECF No. 120-1 at 45–49. The De Simone Parties contend, however, that any mismatch between the Deposited Material and the strains listed on Visbiome's packaging is the result of contamination introduced before the strains were deposited at DSMZ, and not a discrepancy in the Visbiome product itself.[2] ECF No. 105-1 at 49–52; ECF No. 125 at 28–30.

---

[2] The parties' dispute over the DSM Codes is also the subject of litigation in Italy concerning the ownership of the physical samples deposited at DSMZ. ECF No. 1 at ¶ 11, 15, In that case, Actial Farmaceutica, srl ("Actial"), a company related to VSL, brought claims against Professor De Simone seeking a determination that Actial owns the Deposited Material. ECF No. 1 at ¶¶ 11, 15, 55; ECF No. 120-2 at ¶ 2. On July 26, 2019, the Court of Rome issued a decision concerning the ownership of those samples. ECF No. 1 at ¶¶ 15, 56. ExeGi contends that the Court of Rome's decision is a preliminary decision that does not address ownership of the DSM Codes themselves. *Id.* at ¶¶ 15, 56, 68–69. But, VSL contends that the Court of Rome, and the Italian appellate courts, have determined that Actial is the rightful owner of the strains deposited at DSMZ. ECF No. 120-2 at ¶ 2. VSL also contends that it

4

The *ExeGi I* Litigation

On May 11, 2015, Professor De Simone and ExeGi commenced a civil action in this Court against VSL and VSL's then-licensee, Sigma-Tau Pharmaceuticals, Inc. (now known as Leadiant Biosciences, Inc. ("Leadiant")), asserting, among other things, a breach-of-contract claim against Leadiant and another party, Alfasigma, for false advertising under the Lanham Act. *De Simone v. VSL Pharmaceuticals, Inc.*, Case No. 8:15-cv-01356 (D. Md.) ("*ExeGi I*"); *see also* ECF No. 1 at ¶¶ 6, 33; ECF No. 105-3 at ¶ 1. The De Simone Parties' Lanham Act false advertising claim in that case was based upon certain statements that the version of VSL#3 being produced in Italy at the time ("Italian VSL#3") was the same probiotic product as the De Simone Formulation. *See, e.g.*, *De Simone v. VSL Pharmaceuticals, Inc.*, Case No. 8:15-cv-01356 (D. Md.) ("*ExeGi I*").

After VSL, Leadiant and Alfsigma moved to dismiss the De Simone Parties' Lanham Act false advertising claim, the Court held that the evidence was sufficient to establish that, at a minimum, a page of the VSL#3 website satisfied all of the elements of a false advertising claim as to Alfasigma. *De Simone v. VSL Pharm., Inc.*, 395 F. Supp. 3d 617, 622 (D. Md. 2019). The webpage at issue provides as follows:

> [M]oving VSL#3 back to the original manufacturing facility in Italy allowed the brand to revert back to an established process that removes all dairy while maintaining the original proprietary mix of eight strains of live bacteria.

*Id.*, ECF No. 135-17 at 17–18, J.R. 00516–17. The Court also held that a Lanham Act plaintiff "need not show actual injury or harm but instead must show that the defendant benefited from the false advertising," when seeking the defendant's profits, rather than damages. *De Simone*, 395 F. Supp. 3d at 632; ECF No. 135-17 at 18, J.R. 00517. And so, the Court denied Leadiant and Alfsigma's motion to dismiss this claim. *Id*.

In November 2018, the Court held a 14-day jury trial on the parties' claims, and, on November 20, 2018, the jury returned a verdict in favor of the De Simone Parties. ECF No. 105-3 at ¶ 1; ECF No. 1 at ¶¶ 13, 51, 53. Specifically, the jury found in favor of Professor De Simone with regards to: (1) his breach-of-contract claim against VSL, awarding $967,435; (2)

---

relied upon the Court of Rome's decision in the letters that give rise to ExeGi's claims in this case. ECF No. 120-2 at ¶ 2.

5

his unjust enrichment claim against VSL and Leadiant, awarding $1,874,602 against VSL and $172,004 against Leadiant; (3) his Lanham Act false advertising claims against Leadiant and Alfasigma, awarding $15,000,000 against Alfasigma; and (4) VSL's counterclaim for breach of fiduciary duty. *De Simone v. VSL Pharm., Inc*., 395 F. Supp. 3d 617, 622 (D. Md. 2019); ECF No. 135-17 at 1–2, J.R. 00500–01. And so, the Court entered judgment in that case on November 21, 2018. ECF No. 105-3 at ¶ 1; ECF No. 1 at ¶¶ 13, 51 and 53.[3]

On June 20, 2019, the Court entered a permanent injunction against Leadiant and Alfasigma, enjoining "Alfasigma and Leadiant from making any claims in VSL#3 promotional materials that state or suggest a false continuity between Italian VSL#3 and the De Simone Formulation, including but not limited to statements claiming that VSL#3 continues to contain the 'original proprietary blend' or the 'same mix in the same proportions.'" ECF No. 135-19 at 8 (J.R. 00544). The Court also permanently enjoined VSL, Leadiant and Alfasigma from:

> [C]iting any clinical study performed on the De Simone Formulation or implying that any such study was conducted on Italian VSL#3. Where the CEO of VSL has acknowledged that Italian VSL#3 was the result of an attempt to reverse engineer the De Simone Formulation and that the VSL Parties could not actually replicate the original proprietary mix, and the scientific evidence established that the products are not the same, such a remedy is necessary to prevent further harm to ExeGi.

ECF No. 135-19 at 9, J.R. 00545.[4]

To comply with the Court's permanent injunction, Alfasigma changed the packaging and marketing of VSL#3 and temporarily suspended its sales and marketing of VSL#3. ECF No. 105-3 at ¶¶ 6–7. But, the parties remained in conflict. And so, on August 27, 2019, ExeGi commenced this litigation against VSL. ECF No. 1.

The Court's August 17, 2021, Decision Ruling

On July 2, 2020, the De Simone Parties' filed a motion to dismiss VSL's Lanham Act-false advertising claim in this case. ECF Nos. 14 and 22. On August 17, 2021, the Court, among

---

[3] The parties agree that the De Simone Parties voluntarily dismissed their Lanham Act false advertising and unfair competition claims in the *ExeGi I* litigation with prejudice, prior to the conclusion of the trial. ECF No. 1 at ¶¶ 13, 52.

[4] On February 17, 2021, the Fourth Circuit affirmed the Court's rulings on the parties' post-trial motions, upheld the jury verdict and damages award in the case, and modified portions of the Court's permanent injunction. ECF No. 105-3 at ¶ 12.

6

other things, dismissed portions of VSL's counterclaim issued a ruling dismissing portions of with regards to certain claims that were barred by the doctrine of *res judicata*.  During the hearing on the motion, the Court held that any false advertising claim that could have been litigated in a prior state court case, *Alfasigma USA v. ExeGi*, ("AS Case"), could not be pursued in this litigation under the doctrine of *res judicata*.  ECF No. 41 at 56–57 (Aug. 17, 2021, Motion Hearing, Tr. 56:21–57:3).  And so, the Court held that:

> [R]es judicata applies to claims that were litigated or could have been litigated, any claims based on correspondence or communications, including advertising, sent on or before April 16, 2019, which is the date of the Alfasigma complaint.

*Id.*  (also noting that " . . . these include any claims that include false advertising").

ExeGi's Claims

ExeGi's declaratory judgment, tortious interference and unfair competition claims against VSL in this case arise from a series of letters that VSL's litigation counsel, Brian Schwalb, sent to ExeGi's manufacturers and distributors in 2019 and 2020.  ECF No. 1.  In this regard, it is undisputed that, on August 5, 2019, Mr. Schwalb sent a letter to counsel for Danisco—the manufacturer of Visbiome—notifying Danisco of a "recent judicial decision that directly impacts the legality of the continued sale and distribution of" Visbiome (the "Danisco Letter").  ECF No. 120-2 at ¶ 6; ECF No. 120-1 at 9.  In the Danisco Letter, Mr. Schwalb demands that Danisco take steps to "immediately cease and desist from the production, distribution and sale of Visbiome® unless and until any reference to the DSM Codes is removed from its packaging and packaging inserts, and from any marketing or reference materials for Visbiome®."  ECF No. 120-1 at 9 (quoting Ex. 81, Danisco Letter, J.R. 04019–04020).  Mr. Schwalb also states in the Danisco Letter that:

> [A]ny continued use of the above-referenced DSM codes by De Simone, ExeGi, or any persons or entities acting in concert with De Simone or ExeGi, in connection with the manufacture, distribution, or sale of Visbiome® would constitute a misappropriation of valuable property rights that belong to Actial. . . . The use of the DSM codes in connection with the marketing and packaging of the Visbiome® product constitutes false advertising, misleadingly suggesting that the owner of Visbiome® has ownership of[ or] access to the DSMZ accounts, which is not the case. It also amounts to unfair competition.

ECF No. 139-22 at 2–3 (Danisco Letter, Ex. 81, J.R. 04019–04020); ECF No. 120-1 at 9–10.

7

It is undisputed that, after Danisco received the Danisco Letter, Danisco, ExeGi, and Professor De Simone entered into an indemnification agreement on September 9, 2019. ECF No. 120-2 at ¶¶ 8–9. But the parties dispute the effect of the Danisco Letter on ExeGi's business. In this regard, VSL contends that ExeGi's business was not impacted by this letter, because Danisco continued to fill Visbiome purchase orders for ExeGi and did not modify its supply agreement with ExeGi. ECF No. 120-1 at 10–11. But, ExeGi contends that the Danisco Letter forced it to expend substantial resources and caused lost sales. ECF No. 1 at ¶ 90.

On August 13, 2019, Mr. Schwalb sent another letter that is essentially identical to the Danisco Letter to Pharma Holdings, which is one of ExeGi's Visbiome sellers and distributors (the "Pharma Holdings Letter"). ECF No. 120-2 at ¶ 11. On December 16, 2019, and July 8, 2020, Mr. Schwalb also sent letters to Amazon.com, Inc. ("Amazon") and its outside legal counsel, respectively (the "Amazon Letters"). *Id.* at ¶¶ 13–16. In the Amazon Letters, Mr. Schwalb refers to the decision of the Court of Rome and to this litigation, and he requests that Amazon cease and desist from sales of Visbiome, unless and until the DSM Codes are removed from Visbiome's packaging, inserts, and product images, and that Amazon cease the use of any promotional materials referring to the DSM Codes. ECF No. 120-1 at 12–14.

ExeGi contends that the aforementioned letters wrongfully interfered with its business relationships and constituted unfair competition under Maryland law. ECF No. 1 at ¶¶ 16–18, 82–104. ExeGi also contends that Mr. Schwalb's statements regarding the DSM Codes are false and lack any legal basis. *Id.* But VSL counters that the statements in Mr. Schwalb's letters are protected by the absolute litigation privilege, and that ExeGi suffered no damages as a result of the letters. ECF No. 120-1.

### VSL's False Advertising Counterclaim

VSL's remaining counterclaim in this case alleges that the De Simone Parties made false and misleading statements in the marketing of Visbiome in violation of the Lanham Act. ECF No. 16 at ¶¶ 94–101. The alleged false and misleading statements are summarized below.

Statement Regarding Strains Deposited at DSMZ: First, VSL contends that the De Simone Parties violated the Lanham Act by claiming that "Visbiome contains the strains deposited at DSMZ." ECF No. 120-1 at 35. In this regard, it is undisputed that the Visbiome labels and marketing materials identify the contents of Visbiome by listing the bacterial genus and species names, each followed by an alphanumeric DSM Code.

8

Statements That VSL#3 Contains Seven, Rather Than Eight, Strains:  Second, VSL argues that ExeGi's statements representing that the current version of VSL#3 contains only seven strains of bacteria, rather than eight, are false and misleading.  *Id.* at 28.  In this regard, VSL identifies the following statements as false:

- [A] January 15, 2019 Article titled "Note to Healthcare Professionals and Patients Regarding the Recent Jury Verdict," Ex. 43, J.R. 02413 ("January 15, 2019 Note"), states '[t]he new VSL#3 product, currently available from Alfasigma, contains 7, not 8, unique bacterial strains.'

- "Once Was VSL#3, Now Visbiome. The Curious History of the De Simone Formulation Probiotic,"  Ex. 93, J.R. 04377 ("Curious History Article"), states "the Italian VSL#3 actually only contained 7 strains of bacteria, not the 8 contained in the original formulation."

- "VSL#3 is no more VSL#3", Ex. 40, J.R. 02092, VSL_EXEGI00001048;  see also  /www.vivomixx.eu/wp-content/uploads/2017/11/VSL3_is_no_more_VSL3.pdf    (last visited Dec. 8, 2025) states "[a] document disclosed recently shows that the new VSL#3 contains 7 (seven) strains, instead of 8 (eight) strains."

- July 23, 2023 correspondence form Claudio De Simone to Suvarna Rekha Puvvada, Ex 106, in which De Simone claims that this "it contains bacteria that are qualitatively and quantitatively different." De Simone also notes that this "counterfeit product has been falsely marketed and promoted to the public and medical community . . . ."

*Id.* at 49.

Statements That VSL#3 Lacks Clinical Studies:  Third, VSL alleges that the DeSimone Parties made false and misleading statements to consumers that no clinical studies or published articles support the safety and efficacy of the current, CSL-manufactured VSL#3.  *Id.* at 15–16. In this regard, VSL identifies the following statements as false:

- [A] January 15, 2019 Note, Ex. 43, J.R. 02413, the De Simone Parties assert that they "won a unanimous jury verdict" including on the key legal claim that "[t]he new VSL#3 product, currently available from Alfasigma, has not been the subject of any published, peer reviewed, controlled trials in humans."

9

- [A] June 25, 2019 Article titled "ExeGi Wins Court Rule Against VSL#3®, Permanent Injunction Blocks False Advertising to Doctors, Consumers," Ex. 107, J.R. 04784- 786 ("June 25, 2019 Article"), stating that "[o]n November 2018, a federal jury unanimously found in favor of the plaintiffs" and that "De Simone proved that . . . VSL launched their version of VSL#3, an untested imitation product."

- [A] Curious History Article, Ex. 93, J.R. 04370-04381, where ExeGi's references VSL#3® as an "imitation formula" which has "not been the subject of any human clinical trial . . . as of the publication of this white paper."

- [A p]amphlet titled "The True Story Behind Visbiome® & VSL#3," Ex. 108, J.R. 04788, claims that VSL#3 is not supported by any "published, peer reviewed, controlled trials."

- In response to a consumer question in an Amazon product review, the De Simone Parties stated that "VSL #3 does not contain the same stains or the same strain rations and has no clinical documentation" Ex. 109, J.R. 04789.

*Id.* at 51–52.

Statements That VSL#3 Is An "Imitation" Or "Knock Off:" Fourth, VSL contends that certain statements describing VSL#3 as an "imitation" and a "knock off" are false and misleading. ECF No. 120-1 at 56. In this regard, VSL identifies the following statements as false:

- [A] June 25, 2019 Article, Ex. 107, J.R. 04784 the De Simone Parties refer to VSL #3 as an "untested imitation product."

- [A] November 16, 2020 Amazon Answer, Ex. 112, J.R. 04819, ExeGi again claimed VSL#3® was an "imitation" product in answering an Amazon consumer review question asking, "is this product [Visbiome] the same as VSL#3®?" ExeGi falsely stated that the De Simone Parties "successfully argued in Federal court that VSL Pharmaceuticals had attempted to create an 'imitation' [formula] even though they never had access to the proprietary formula" and that VSL "continued to call this knock-off by its original brand name, 'VSL#3®'."

- [A] Curious History Article, Ex. 93, J.R. 04373 refers to VSL#3® as an "imitation formula".

10

- [In] "A Message from the Inventor," available at (https://www.visbiome.com/pages/12-a message-from-the-inventor.), Ex. 102, J.R. 04599, Prof. De Simone falsely states that: "my former partners attempted to create a 'knock-off' version of my original formulation and began selling it using the same VSL#3® brand name without disclosing that the knock off was different from the original formulation."

*Id.* at 56–57.

Statements That VSL#3 Has Been Discontinued Or Recalled:  Lastly, VSL argues that ExeGi's statements representing that VSL#3 had been discontinued or recalled, and that VSL#3 had been renamed or rebranded as Visbiome, are false and misleading.  *Id.* at 19.  In this regard VSL identifies the following statement as false:

- [On a] Jan. 23, 2023 Visbiome Web Capture, Ex. 102, J.R. 04599, ExeGi and De Simone have each falsely stated that "VSL#3 is no longer available for sale at many retailers," in a letter from De Simone, with his photograph and signature included (further implication of De. Simone's false statements in his individual capacity).

*Id.* at 59–60.

### The Parties' Experts

Lastly, the parties have designated expert witnesses that they intend to present at trial. The Court summarizes the qualifications and opinions of the relevant experts below.

Dr. Rodolphe Barrangou:  VSL has retained Dr. Rodolphe Barrangou as an expert witness in the field of probiotics and microbiology.  ECF No. 119 at 7.  Dr. Barrangou holds several degrees from universities in the United States and France, including a Ph.D. in functional genomics from North Carolina State University.  *Id.*  Following the completion of his Ph.D., Dr. Barrangou worked for Danisco/DuPont in Madison, Wisconsin—a facility engaged in the research, development, and production of bacterial strains, including strains used in both VSL#3 and Visbiome—where he rose to become the R&D Director for Genomics, before moving to North Carolina State University in 2013.  *Id.* at 7.  Since 2016, Dr. Barrangou has served as the Todd R. Klaenhammer Distinguished Professor in Probiotics Research in the Department of Food, Bioprocessing and Nutrition Sciences at North Carolina State University, where he oversees a laboratory that evaluates and tests bacterial strains used in probiotics.  *Id.* at 7–8.  He

11

has also authored more than 250 publications and has been elected to the National Academy of Sciences. *Id.* at 7–8.

VSL states that Dr. Barrangou will provide expert opinions on the following topics: (1) the importance of strains in probiotics, and how and why deposit designations such as the DSM Codes are used to describe specific bacterial strains; (2) that, based upon his own testing of the strains deposited at DSMZ, and his review of corroborating testing performed by two other laboratories, including DSMZ, the strains present in Visbiome do not match the strains deposited at DSMZ, as represented on Visbiome's packaging and in its advertising; and (3) that, based upon genomic sequencing of commercial VSL#3 purchased in the United States, VSL#3 contains eight strains of bacteria, rather than seven. *Id.* at 1–2. Dr. Barrangou will also opine that any contamination of the strains deposited at DSMZ occurred prior to their deposit in 2011. *Id.* at 5.

Dr. Ronald Goodstein: VSL has also retained Dr. Ronald Goodstein as a marketing expert. ECF No. 118 at 8. Dr. Goodstein is a marketing expert with decades of real-world and tenured teaching experience, who has repeatedly been qualified to testify regarding surveys and the impact of false or misleading advertising. *Id.* VSL retained Dr. Goodstein to assess how the challenged Visbiome representations in this case affect the perceptions of consumers and health care providers who purchase or recommend VSL#3. *Id.* at 9. To that end, Dr. Goodstein designed and conducted three surveys—a Consumer Impression Survey, an HCP Impression Survey and an HCP Purchase Driver Survey—and performed a User-Generated Content Analysis for this case. *Id.* at 9; ECF No. 136-5 at 19–20 (Goodstein Opening Report, Ex. 35, ¶ 21, J.R. 01192–93).

Dr. Goodstein will provide the following expert opinions: (1) the marketing representations about Visbiome "significantly and detrimentally affected" consumers' and health care providers' impressions of VSL#3; (2) that health care providers' recommendations are influenced by probiotic product features, including formulation, strain composition and clinical studies; and (3) consumers consider probiotic strain information when making purchase decisions. ECF No. 118 at 9–10; ECF No. 136-5 at 99–100 (Goodstein Opening Report, Ex. 35, ¶¶ 147–149, J.R. 01272–73).

Marc Tewey: Lastly, the De Simone Parties have designated Marc Tewey, the chief executive officer of ExeGi, as a hybrid fact-expert witness in the field of medical marketing.

ECF No. 128 at 5.  Mr. Tewey has more than two decades of experience marketing probiotic medical foods, including the two products at issue in this case.  *Id*.  He has also served as brand manager for the original VSL#3 product at Sigma-Tau Pharmaceuticals, and as the chief executive officer of Cambrooke Therapeutics, where he oversaw the sales and marketing of eight medical food products.  *Id.* at 7–8.  Mr. Tewey currently oversees the commercialization of Visbiome.  *Id.*

Mr. Tewey will offer an opinion on the meaning of the term "clinical studies" as this term is used and understood within the field of medical marketing, and he will testify that terms such as "clinical studies" and "clinical data" refer to double-blind, placebo-controlled human trials. *Id.* at 17–18.  Mr. Tewey will also testify about the common labelling and marketing practices in the probiotic industry, and the naming conventions at bacterial repositories.  *Id.* at 5–6.

### B.    Relevant Procedural Background

ExeGi commenced this civil action on August 27, 2019.  ECF No. 1.  On November 25, 2019, VSL filed an answer to the complaint and a counterclaim against ExeGi and Professor De Simone.  ECF Nos. 4 and 5.

On July 23, 2020, VSL filed an amended counterclaim.  ECF No. 16.  The De Simone Parties answered the amended counterclaim on August 31, 2021, and VSL filed an amended answer to the complaint on March 1, 2022.  ECF Nos. 43 and 51.

On October 1, 2025, the DeSimone Parties filed: (1) a motion to exclude the opinions of Dr. Barrangou, pursuant to Fed. R. Evid. 702 (ECF No. 101); (2) a motion to exclude the opinions of Dr. Goodstein, pursuant to Fed. R. Evid. 702 (ECF No. 104); and (3) a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof (ECF Nos. 105 and 105-1).

On December 12, 2025, VSL filed: (1) a motion *in limine* to exclude the expert testimony of Mr. Tewey (ECF No. 116) and (2) and a motion for summary judgment and response in opposition to the De Simone Parties' motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof (ECF No. 120).

The parties filed their respective reply briefs on February 25, 2026, and March 25, 2026. ECF Nos. 124–128, 130 and 131.

The parties' motions having been fully briefed, the Court resolves the pending motions.

13

## III.    LEGAL STANDARDS

### A.    Motions To Exclude Expert Testimony

Federal Rule of Evidence 702 governs testimony by expert witnesses and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Expert testimony must be reliable and relevant.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Given this, the Court has held that an expert opinion is relevant "only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be . . . informed by the witness' expertise[] rather than simply an opinion broached by a purported expert." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 393 (D. Md. 2001) (internal quotations and citations omitted).

"The party seeking admission of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence." *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F.Supp.2d 549, 553 (D. Md. 2011).  When a party seeks to admit expert testimony, the district court acts as "gatekeeper" to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.; *see also Nease v. Ford Motor Co.*, 848 F.3d 219, 229, (4th Cir. 2017) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)) (it is a court's "responsibility to 'ensur[e] that an expert's testimony both rests on reliable foundation and is relevant to the task at hand'").  "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir.

14

1993).  And so, the Court should exclude expert testimony if such testimony is based upon only belief or speculation.  *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F.Supp.2d 334, 340 (D. Md. 2011) ("[T]he Court must exclude expert testimony that is based only on belief or speculation, and inferences must be derived using scientific or other valid methods.") (internal quotation omitted); *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record.").

### B.    Fed. R. Civ. P.  56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256. In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for

15

summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### C.   The Declaratory Judgment Act

"Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (emphasis in original) (quoting 28 U.S.C. § 2201(a)); *see Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480, 497 (D. Md. 2022). The United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have long held that district courts are afforded discretion in determining whether to grant declaratory relief. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998) ("This circuit has long recognized the discretion afforded to district courts in determining whether to render declaratory relief."); *Kline v. Hyundai Motor Am. Inc.*, 751 F. Supp. 3d 542, 564 (D. Md. 2024).

The Fourth Circuit has also held that the Court must consider three factors when determining whether a declaratory judgment is appropriate, namely: "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the [C]ourt possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the [C]ourt does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal citation and quotation marks omitted). And so, "[a] declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (internal citation and quotation marks omitted).

### D.   Tortious Interference And Unfair Competition Claims

This Court has recognized that "the tort of intentional interference with contractual or business relations is 'well-established in Maryland.'" *State Farm Mut. Ins. Co. v. Slade*

16

*Healthcare, Inc.*, 381 F. Supp. 3d 536, 569 (D. Md. 2019) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 116 (Md. 1994)).  This tort provides that "one not privileged to do so who purposely induces or causes a third person not to perform a contract or enter into or continue a business relation with another is liable for the harm caused thereby."  *United Rental Equip. Co. v. Potts & Callahan Contracting Co.*, 191 A.2d 570, 574 (Md. 1963).  To prove a claim for intentional interference with contractual or business relations, a plaintiff must show the following elements:  "(1) intentional and [willful] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting."  *See Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (quoting *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003)).

This Court has also recognize unfair competition as the general principle that "all dealings must be done on the basis of common honest and fairness, without taint of fraud or deception." *M-Edge Accessories LLC v. Amazon.com Inc.*, No. 11-3332, 2015 WL 403164, at *4 (D. Md. Jan. 29, 2015) (quoting *Baltimore Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943).  "The essential element of unfair competition is deception-either actual or probable deception."  *Id.* (internal quotations and citation marks omitted).  And so, "[t]o prevail on an unfair competition claim, a plaintiff must prove that the alleged misconduct "damaged or jeopardized their business."  *Id.* (quoting *Berlyn Inc. v. The Gazette Newspapers, Inc.*, 73 F. App'x 576, 585 (4th Cir.2003); *Baltimore Bedding,* 34 A.2d at 342 ("Each case is a law unto itself" and "[w]hat constitutes unfair competition in a given case is governed by its own particular facts and circumstances").

### E.   Lanham Act– False Advertising Claims

To prevail on a false advertising claim under the Lanham Act, a plaintiff must demonstrate that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured

17

as a result of the misrepresentation, either by direct diversion of
sales or by a lessening of goodwill associated with its products.

*Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (internal citations, quotations and emphasis omitted); *De Simone v. VSL Pharms., Inc.*, 395 F. Supp. 3d 617, 623 (D. Md. 2019), *aff'd sub nom. De Simone v. Alfasigma USA, Inc.*, 847 F. App'x 174, 182 (4th Cir. 2021) (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002)).  When a false advertising claim involves multiple statements, a plaintiff "may not mix and match statements, with some satisfying one Lanham Act element and some satisfying other[;]" rather, at least one challenged statement must satisfy all five elements. Veri*sign, Inc. v. XYZ.COM, LLC*, 848 F.3d 292, 299 (4th Cir. 2017); *De Simone v. VSL Pharms., Inc.*, 395 F. Supp. 3d at 623.

The Fourth Circuit has held that "[w]hether an advertisement is literally false is an issue of fact."  *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare L.P.*, 131 F.3d 430, 434 (4th Cir. 1997).  The contested statement may either be "false on its face" or "although literally true, likely to mislead and to confuse consumers given the merchandising context."  *Scotts*, 315 F.3d at 273 (quoting *C.B. Fleet*, 131 F.3d at 434).  In this regard, where a challenged statement rests upon a scientific proposition, litigants who "concede that some reasonable and duly qualified scientific experts agree with a scientific proposition . . . cannot also argue that the proposition is 'literally false.'"  *In re GNC Corp.*, 789 F.3d 505, 515–16 (4th Cir. 2015).  But that principle does not mean that a false advertising claim grounded in science must fail whenever the defendant presents a supporting expert.  Rather, "[i]n the absence of a concession that the statement is the subject of reasonable scientific debate, that question is properly decided by the jury."  *De Simone*, 395 F. Supp. 3d at 626.

If an advertisement is literally false, a party may succeed without evidence of consumer deception, because deception of the purchasing audience is presumed.  *Scotts*, 315 F.3d at 273; *In re GNC Corp.*, 789 F.3d at 514; *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011).  But if a plaintiff's theory of recovery is premised upon a claim of implied falsehood, the plaintiff "must demonstrate, by extrinsic evidence, that the challenged advertisements tend to mislead or confuse consumers," generally in the form of consumer survey evidence.  *Scotts*, 315 F.3d at 273; *Verisign*, 848 F.3d at 304.

Lastly, and relevant to this dispute, a plaintiff must prove an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations., to prevail on a false advertising claim.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572

18

U.S. 118, 140 (2014).  Such an injury can occur "when deception of consumers causes them to withhold trade from the plaintiff."  *De Simone*, 395 F. Supp. 3d at 629 (quoting *Lexmark*, 572 U.S. at 134).  While the diversion of sales is the paradigmatic direct injury from false advertising, it is not the only injury cognizable under Section 1125(a).  *Lexmark*, 572 U.S. at 138–40.

> **F.    Fed. R. Civ. P. 11**

Rule 11 of the Federal Rule of Civil Procedure requires that an attorney certify, after "an inquiry reasonable under the circumstances," that the factual contentions in a filing "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  The Fourth Circuit has held that factual allegations violate Rule 11(b)(3) when they are "unsupported by any information obtained prior to filing[,]" *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (internal quotation omitted), and that a legal position is sanctionable where it has "absolutely no chance of success[,]" *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (internal quotation omitted).  But, the Fourth Circuit has cautioned that "[c]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment."  *Id.*  And so, sanctions are reserved for "egregious misconduct" and are not intended to "penalize legitimate advocacy or good-faith disagreements about the factual record or the law."  *Kennedy v. NYX Ent., Inc.*, 2025 WL 3017226, at *7 (D. Md. Oct. 28, 2025) (internal quotation omitted).

## IV.  ANALYSIS

Pending before the Court are the parties' respective motions to exclude expert testimony, pursuant to Fed. R. Evid. 702, and cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56.  ECF Nos. 101, 102, 104, 105, 116 and 120.

First, the De Simone Parties have moved to exclude the expert opinion of VSL's probiotics and microbiology expert, Dr. Randolphe Barrangou, regarding the eight probiotic strains deposited at DSMZ, upon the grounds that this opinion rests upon an imprecise methodology, fails to account for contamination introduced during DSMZ's copying process and is irrelevant to this case.  *See generally* ECF No. 101.  The De Simone Parties also seek to exclude the opinion and testimony of VSL's expert, Dr. Ronald Goodstein, upon the grounds that his consumer-perception surveys are unreliable and based upon an improper methodology.  *See*

19

*generally* ECF No. 104.  And so, the De Simone Parties request that the Court exclude the testimony and opinions of these two experts.  ECF Nos. 101 and 104.  VSL counters that the Court should not exclude these expert opinions, because they are based upon a sound and reliable methodology, are relevant to the issues in this case and will assist the jury in resolving this dispute.  ECF Nos. 118 and 119.  And so, VSL requests that the Court deny the De Simone Parties' motions to exclude.  *Id*.

Second VSL seeks to exclude the opinions and testimony of the De Simone Parties' expert on the meaning of "clinical studies," Marc Tewey, upon the grounds that Mr. Tewey lacks scientific or regulatory training to serve as an expert and that his opinion regarding the meaning of "clinical studies" rests entirely upon subjective belief, contradicted by the medical and scientific literature.  *See generally* ECF No. 116.  And so, VSL also requests that the Court exclude Mr. Tewey's expert opinions and testimony.  *Id*.  The De Simone Parties counter that Mr. Tewey is qualified to give an expert opinion on the meaning of "clinical studies," given his extensive professional background in medical marketing and previous experience serving as an expert witness.  ECF No. 128  And so, the De Simone Parties requests that the Court deny VSL's motion to exclude.  *Id*.

Third, the De Simone Parties have moved for summary judgment on ExeGi's declaratory judgment claim and VSL's Lanham Act-false advertising counterclaim.  *See generally* ECF No. 105-1.  In this motion, the De Simone Parties argue that the Court should dismiss VSL's Lanham Act-false advertising counterclaim, because: (1) VSL cannot show harm; (2) VSL's claims against Professor De Simone are frivolous; and (3) the statements about which VSL complaints are not actionable under the Lanham Act.  *See generally id.*  The De Simone Parties also argue that ExeGi is entitled to summary judgment on its declaratory judgment claim, because: (1) there is an actionable case and controversy regarding this claim; (2) *res judicata* bars VSL's challenge to this claim and (3) ExeGi is permitted to reference the DSM Codes.  *See generally id.*  And so, the De Simone parties request that the Court enter judgment summarily in their favor on these claims.  *See generally id.*

In its response in opposition to the De Simone Parties' motion for summary judgment, VSL argues that summary judgment is not warranted on their Lanham Act-false advertising claim, because: (1) VSL has substantial evidence to show that the de Simone Parties' advertising statements are false and misleading; (2) VSL has sufficiently demonstrated that the De Simone

20

Parties misrepresentations proximately caused VSL harm; (3) VSL has sufficient evidence to sustain its claims against Professor De Simone; and (4) VSL is seeking injunctive relief to stop the De Simone Parties from making false statements. *See generally* ECF No. 120.  But, VSL does not address, or respond to, the De Simone Parties' arguments regarding ExeGi's declaratory judgment claim. *See generally id.*  And so, VSL requests that the Court deny ExeGi's motion for summary judgment. *See generally id.*

Fourth, VSL has moved for summary judgment on ExeGi's state law claims related to certain letters sent by VSL's litigation counsel, upon the grounds that the undisputed material facts show that: (1) ExeGi's tortious interference and unfair competition claims are barred by the litigation privilege; (2) ExeGi's tortious interference and unfair competition claims fail as a matter of law, because ExeGi did not suffer any damages as result of the letters; and (3) ExeGi has not proffered any expert testimony to establish damages. *See generally id.*  And so, VSL requests that the Court enter judgment summarily in its favor on these claims. *See generally id.*

The De Simone Parties counter that summary judgment is not warranted on these two claims, because: (1) the litigation privilege does not immunize the letters at issue and (2) the evidence shows that ExeGi suffered damages and other harms as a direct result of the letters. *See generally* ECF No. 125.  And so, the De Simone Parties request that the Court deny VSL's motion for summary judgment. *See generally id.*

For the reasons that follow, the Court declines to exclude the expert testimony and opinions of Dr. Randolphe Barrangou and Dr. Ronald Goodstein, because the Court is satisfied that the opinions offered by these experts are relevant, reliable and will aid the jury in resolving this dispute.  The Court also declines to exclude the expert testimony and opinion of Marc Tewey, because ExeGi has shown that Mr. Tewey is qualified to serve as an expert witness on the topic of the definition of "clinical studies," and his testimony will aid the jury in resolving this dispute.

In addition, the undisputed material facts in this case show that VSL cannot prevail on its Lanham Act-false advertising counterclaim, with the exception of its counterclaim based upon statements that VSL #3 lacks clinical studies and is untested, because VSL cannot show that the statements at issue are false and/or actionable under the Lanham Act.  The undisputed material facts also show that ExeGi is entitled to summary judgment on its declaratory judgment claim regarding its use of DSM Codes on the marketing materials for Visbiome.

21

But, the undisputed material facts similarly show that ExeGi cannot prevail on its tortious interference and unfair competition claims, because ExeGi cannot show that it suffered any damages as result of the letters from VSL's litigation counsel. *See generally* ECF No. 120-1. Lastly, ExeGi has not shown that sanctions against VSL are warranted in this litigation, pursuant to Fed. R. Civ. P. Rule 11. And so, the Court: (1) DENIES the DeSimone Parties' motion to exclude the opinions of Dr. Barrangou (ECF No. 101); (2) DENIES the De Simone Parties' motion to exclude the opinions of Dr. Goodstein (ECF No. 104); (3) DENIES VSL's motion to exclude the opinions of Mr. Tewey (ECF No. 116); (4) GRANTS-in-PART and DENIES-in-PART the DeSimone Parties' motion for summary judgment (ECF No. 105) and ENTERS JUDGMENT in favor of ExeGi on Count I of the complaint; (5) GRANTS-in-PART and DENIES-in-PART VSL's motion for summary judgment as (ECF No. 120) and ENTERS JUDGMENT in favor of VSL on Counts II and III of the complaint; and (6) DENIES the De Simone Parties' motion for sanctions (ECF No. 102).

### A.    The Court Declines To Exclude The Expert Testimony Of Dr. Randolphe Barrangou

As an initial matter, the Court declines to exclude the expert opinions and testimony of VSL's probiotics and microbiology expert Dr. Randolphe Barrangou, because VSL has shown that his expert testimony is relevant, reliable and will aid the jury in resolving this dispute. Fed. R. Evid. 702.

Pursuant to Federal Rule of Evidence 702, a qualified expert may testify at trial, if their specialized knowledge assists the factfinder, their opinions rely on sufficient data and their reliable methods are properly applied to the case's facts. Fed. R. Evid. 702. In this case, VSL states that it will present expert testimony from Dr. Barrangou on the following four topics at trial: (1) the importance of strains in probiotics; (2) how and why references to deposit numbers like those used by the Leibniz Institute DSMZ-German collection of microorganisms and cell cultures GmbH are used to describe specific bacterial strains; (3) the strains presented in Visbiome are not the same bacteria that are referenced by DSM numbers on Visbiome's packaging and advertising; and (4) VSL#3 manufactured by Danisco and CSL contain eight equivalent strains of bacteria. ECF No. 101-3 at 3–11. The DeSimone Parties seek to exclude Dr. Barrangou's expert opinions, because: (1) his opinions about the composition of the 2020 DMSZ samples and the reasons that the samples were contaminated are irrelevant, unreliable and lack scientific support and (2) the remainder of his opinions are not relevant and will not assist

22

the jury in understanding any of the relevant issues at trial. ECF No. 101-1. And so, the De Simone Parties argue that Dr. Barrangou's expert testimony should be exclude as unreliable and irrelevant.

The Court disagrees for several reasons. First, as the parties appear to agree, Dr. Barrangou is clearly qualified to serve as an expert on probiotics in this case. Notably, Dr. Barrangou holds numerous degrees from universities in the United States and France, including a Ph.D. in functional genomics from North Carolina State University, and he has served as the Todd R. Klaenhammer Distinguished Professor in Probiotics Research in the Department of Food, Bioprocessing and Nutrition Sciences at North Carolina State University since 2016. ECF No. 119 at 7.

VSL has also shown that Dr. Barrangou's expert opinions in this case are relevant, because it is undisputed that DSM Codes appear on the packaging and advertisements for Visbiome, which is relevant to the false advertising and tort claims in this case. *See, e.g.*, ECF Nos. 148-16, 148-17, 148, 19, 148-20 and 148-21. The Court is also satisfied that Dr. Barrangou's expert opinions are reliable. Notably, the De Simone Parties' objections to Dr. Barrangou's expert opinions regarding the contamination of the strains at DSMZ reflect a factual dispute between the parties about when the probiotic strains that VSL obtained from DSMZ were contaminated. The parties' factual dispute on this topic should be resolved by the trier of fact and the De Simone parties will have the opportunity to cross-examine Dr. Barrangou regarding his opinions and methodologies related to this topic during the trial.

The Court is also satisfied that Dr. Barrangou's expert opinions would aid the jury in resolving VSL's false advertising counterclaim in this case. *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) ("Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror."). And so, the Court declines to exclude Dr. Barrangou's expert opinions and DENIES VSL's motion to exclude this expert testimony (ECF No. 101).

**B.    The Court Declines To Exclude The Expert Testimony Of Dr. Ronald Goodstein**

The Court also declines to exclude the expert testimony of VSL's consumer expert, Dr. Goodstein, because VSL has shown that his expert opinions and surveys are relevant, reliable and would aid the jury in resolving this dispute. In this regard, VSL states that Dr. Goodstein will offer expert opinions on the following topics at trial: (1) Visbiome advertisements and

23

marketing collateral included representations that significantly and detrimentally affected consumers' and HCPs' impressions of VSL#3; (2) HCPs' recommendation decisions are influenced by various features of probiotic dietary supplements, including probiotic strains, clinical studies and scientific publications, as well as the accurate reporting of such product features; and (3) certain consumers of probiotic dietary supplements are likely to consider information on probiotic strains to inform their final purchase decisions, based on the frequency with which probiotic strain-related keywords are mentioned by consumers online.  *See* ECF No. 118 at 12–37; *see also* ECF No. 118-3.  The DeSimone Parties seek to exclude Dr. Goodstein's expert opinions on the following grounds: (1) Dr. Goodstein's consumer impression survey is unreliable, irrelevant and must be excluded; (2) Dr. Goodstein's health care provider impression survey is unreliable and irrelevant and must be excluded; (3) Dr. Goodstein's health care provider purchase driver survey is unreliable and irrelevant and must be excluded; and (4) Dr. Goodstein's User Generated Content Analysis is unreliable and irrelevant and must be excluded. ECF No. 104-1.  And so, the DeSimone Parties argue that Dr. Goodstein's expert testimony could confuse the jury.  *Id*.

The Court, again, disagrees for several reasons.  First, there is no dispute that Dr. Goodstein is qualified to serve as an expert on consumer and health care provider opinions in this case.  Notably, VSL represents that Dr. Goodstein is a tenured professor of marketing, who has decades of academic and real-world experience in consumer behavior, marketing and advertising, and he has been qualified to testify regarding surveys and the impact of false or misleading advertising in several cases.  *See* ECF No. 136-5 (Goodstein Opening Report at 1-2 & App. B (ECF No. 104-3).

VSL has also shown that Dr. Goodstein's surveys and expert opinions in connection with this case are relevant and reliable.  Dr. Goodstein's Consumer Impression Survey is clearly relevant to this dispute, because the survey evaluates whether consumers exposed to the original version of Visbiome's website were more likely to hold mistaken beliefs about whether VSL#3 is clinically tested, and this issue bears directly on VSL's false advertising counterclaim.  ECF No. 136-5 at 44 (Goodstein Opening Report ¶ 59); *see also* ECF No. 16 at ¶¶ 73 and 93.  Dr. Goodstein's HCP Impression Survey is also relevant to the issues in this case, because this survey evaluates whether health care providers exposed to the original version of Visbiome's

marketing leaflet were more likely to hold mistaken beliefs regarding whether VSL#3 is clinically tested.  ECF No. 135-5 at 21 and 60 (Goodstein Opening Report ¶¶ 25, 83).

The Court is satisfied that Dr. Goodstein's HCP Purchase Driver Survey is also relevant to this dispute, because this survey measures the influence of the probiotic recommendations of health care providers.  *Id.* at 23 and 99 (Goodstein Opening Report ¶¶ 28, 148).  Lastly, the Court is also satisfied that Dr. Goodstein's User Generated Content Analysis is relevant to this dispute, because this analysis assesses whether consumers are aware of, and engage with, probiotic strain-related information online, which is relevant to determining consumer perception and purchase decisions related to this case.  *Id.* at 87 (Goodstein Opening Report ¶ 130) and 48 (Goodstein Rebuttal Report ¶ 67); *see Belville*, 919 F.3d at 232 (quoting *Daubert*, 509 U.S. at 592) (surveys and opinions must have "a valid scientific connection to the pertinent inquiry" in the case)).

The Court is also satisfied that Dr. Goodstein's surveys are the product of reliable principles and methods.  VSL explains that Dr. Goodstein's Consumer Impression Survey employed a test-and-control design that allowed Dr. Goodstein to isolate the incremental impact of the challenged statements in this case.  ECF No. 135-5 at 26–44 (Goodstein Opening Report ¶¶ 53–59).  As VSL explains, the use of corrective stimuli of this kind is a recognized method in the field of deceptive advertising survey research.  ECF No. 118 at 6, 8–9.  VSL also explains that Dr. Goodstein's Consumer Impression Survey incorporates recognized safeguards to minimize bias and demand effects to screen out inattentive respondents and that his use of a Likert scale to measure respondents' beliefs is a well-established and widely accepted survey technique for measuring consumer attitudes and impressions.  ECF No. 136-5 at 27, 30–32 (Goodstein Opening Report ¶¶ 36, 42-47); *see also* ECF No. 118 at 14–16.

In addition, VSL has shown that Dr. Goodstein's HCP Impression Survey and HCP Purchase Driver Survey are reliable.  ECF No. 136-5 at 60–61 (Goodstein Opening Report ¶¶ 83–85); ECF No. 118 at 24; *see also* ECF No. 136-5 at 33 (Goodstein Rebuttal Report ¶ 48); ECF No. 118 at 26–29.  Dr. Goodstein's User Generated Content Analysis is also reliable, because VSL explains that Dr. Goodstein applied a systematic and replicable methodology, extracting posts from social media platforms and review websites over a 25-month period, and searching those posts for strain-related keywords.  ECF No. 136-5 at 61–63 (Goodstein Opening Report ¶¶ 85-88).

While the DeSimone Parties' advance several criticisms of Dr. Goodstein's methodology in developing these surveys, these criticisms concern the factual underpinnings and design choices of the surveys, rather than the validity of the survey methods themselves.  ECF No. 104-1 at 12–18 (arguing that Dr. Goodstein's selection of the "40+ scientific publications" modification, his simultaneous alteration of multiple statements, and his interpretation of the Likert-scale responses are each unsound); ECF No. 104-1 at 20–23 (arguing that the definition of the survey universe is not proper and that the use of an assertedly ambiguous survey question) Given this, the De Simone Parties' objections to Dr. Goodstein's opinions go to the weight and credibility of these opinions, rather than their admissibility.  *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017).

The Court is also satisfied that Dr. Goodstein's surveys and expert opinions would aid the jury in resolving VSL's false advertising counter claim.  Dr. Goodstein's Consumer and HCP Impression Surveys will help the jury understand how consumers and health care providers perceive and react to comparative advertising—a topic that does not fall within the everyday knowledge and experience of a lay juror.  *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 276 (4th Cir. 2002).  Dr. Goodstein's HCP Purchase Driver Survey will similarly aid the jury in understanding the factors that drive health care providers' recommendations regarding probiotic dietary supplements, and his User Generated Content Analysis will help the jury evaluate whether probiotic strain information is part of the landscape of consumer awareness that informs purchase decisions.  And so, the Court also declines to exclude Dr. Goodstein's expert opinion and DENIES the DeSimone Parties' motion to exclude this testimony (ECF No. 118).

### C.    The Court Declines To Exclude The Expert Testimony Of Marc Tewey

Lastly, the Court declines to exclude the expert opinion and testimony of the De Simone Parties' hybrid witness, Marc Tewey, because the Court is satisfied that Mr. Tewey is qualified to serve as an expert witness on the topic of the definition of "clinical studies."  It is undisputed that Mr. Tewey has more than two decades of professional experience in the field of medical marketing, including marketing the two products at issue in this case, VSL#3 and Visbiome.  ECF No. 128 at 9.  Notably, Fed. R. Evid. 702 permits a witness to be qualified by "knowledge, skill, experience, training, or education," and experience alone may supply a sufficient foundation.  Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).

ExeGi has also shown that Mr. Tewey's expert testimony on this topic is reliable.  Mr. Tewey explains that his understanding of the term "clinical studies" is derived from: (1) decades of marketing probiotic products to physicians and consumers; (2) developing and approving marketing materials; and (3) his interactions with medical professionals at industry conferences, through which he learned how the term is understood and used within the medical marketing field.  ECF No. 128 at 12–14.  *See Metromont Corp. v. Allan Myers, L.P.*, No. CV DKC 18-3928, 2021 WL 1733474, at *4 (D. Md. May 3, 2021) (testimony concerning the specialized meaning of a term of art within a particular industry, based on experience in that industry, is a recognized and proper subject of expert testimony).  While VSL understandably disagrees with Mr. Tewey's opinion on this topic, its objections relate to the nature of Mr. Tewey's conclusions and the factual basis for his opinion, rather than reliability.

The Court is also satisfied that Mr. Tewey's testimony will aid the jury in resolving VSL's false advertising counterclaim in this case, because the meaning of "clinical studies" is relevant to this counterclaim.  And so, the Court declines to exclude Mr. Tewey's expert testimony and DENIES VSL's motion to exclude (ECF No. 116).

### D. The Court Grants-in-Part and Denies-in-Part ExeGi's Motion For Summary Judgment

#### 1. The Undisputed Material Facts Show That VSL Cannot Prevail On Most Aspects Of Its False Advertising Counterclaim

Turning to the De Simone Parties' motion for summary judgment, the undisputed material facts show that VLS cannot prevail on most aspects of its Lanham Act-false advertising claim, because it cannot show that the De Simone Parties made a false or misleading description of fact or representation of fact in a commercial advertisement, on that the statements are otherwise actionable under the Lanham Act.

To prevail on its false advertising counterclaim under the Lanham Act, VSL must show that: (1) the De Simone Parties made a false or misleading description of fact or representation of fact in a commercial advertisement about their own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the De Simone Parties placed the false or misleading statement in interstate commerce; and (5) VSL has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015); *De Simone v. VSL Pharms., Inc.*, 395 F. Supp. 3d 617, 623 (D. Md. 2019), *aff'd sub nom. De Simone v. Alfasigma USA, Inc.*, 847 F. App'x 174, 182 (4th Cir. 2021) (quoting *Scotts*, 315 F.3d at 272 (4th Cir. 2002)). The Fourth Circuit has held that "[w]hether an advertisement is literally false is an issue of fact." *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare L.P.*, 131 F.3d 430, 434 (4th Cir. 1997). A contested statement may either be "false on its face," or "although literally true, likely to mislead and to confuse consumers given the merchandising context." *Scotts*, 315 F.3d at 273 (quoting *C.B. Fleet*, 131 F.3d at 434). And so, relevant here, where a challenged statement rests upon a scientific proposition, litigants who "concede that some reasonable and duly qualified scientific experts agree with a scientific proposition . . . cannot also argue that the proposition is 'literally false.'" *In re GNC Corp.*, 789 F.3d 505, 515–16 (4th Cir. 2015).

In this case, the parties agree that VSL relies upon the following five categories of statements to support its Lanham Act- false advertising counterclaim: (1) statements regarding the strains deposited at DSMZ; (2) statements that vsl#3 contains seven, rather than eight, strains; (3) statements that vsl#3 lacks clinical studies; (4) statements that VSL#3 is an "imitation" or "knock off;" and (5) statements that vsl#3 has been discontinued or recalled. ECF No. 120-1 at 45–60. For the reasons that follow, the Court agrees with the De Simone Parties that VSL cannot prevail on its false advertising counterclaim based upon the statements identified in categories 1, 2, 4 and 5 above, because VSL cannot show that any of these statements are false, or otherwise actionable under the Lanham Act But, evidence before the Court shows that whether VSL may be able to prevail on a false advertising claim based on the statements that VSL#3 lacks clinical studies. And so, the Court grants-in-part and denies-in part the De Simone Parties' motion for summary judgment on VSL's Lanham Act-false advertising counterclaim.

<u>VSL Cannot Show That The Statements About Strains Deposited At DSMZ Are False</u>

As an initial matter, the Court agrees with the De Simone Parties that the undisputed material facts in this case make clear that VSL cannot prevail on its false advertising counterclaim based upon the De Simone Parties' alleged statements about the strains deposited at DSMZ. In its counterclaim, VSL argues that the De Simone Parties violated the Lanham Act by claiming that "Visbiome contains the strains deposited at DSMZ." ECF No. 120-1 at 35. But, as the De Simone Parties correctly observe, VSL identifies no instance in which the De Simone

28

Parties actually made such a statement, and there is no evidence before the Court to show that the De Simone Parties made this statement.  ECF No. 125 at 23.

VSL's counterclaim regarding the DSMZ strains also appears to be based upon the undisputed presence of the alphanumeric DSM Codes on the packaging for Visbiome.  *See* Ex. 41, 236:7–238:4, J.R. 02331–333 (describing VSL's claim as "a label issue, not a content issue").  But the undisputed material facts show that VSL cannot establish that the use of the DSM Codes on these materials conveys a false message.

To find the use of DSM Codes false or misleading, VSL needs to show, among other things, that a consumer: (1) would recognize that the letters "DSM" as referring to the Leibniz Institute DSMZ; (2) understand that the accompanying code is a scientific accession reference to a microbial deposit at the DSMZ; and (3) know that DSMZ maintains physical samples of that deposit; and then assume that the listing of the code means that the product contains material sourced from that particular deposit.  ECF No. 105-1 at 44–47.  But, the evidence before the Court shows that VSL's own expert, Dr. Goodstein, has acknowledged that such a chain of reasoning is beyond the grasp of most consumers.  ECF No. 136-5 (Ex. 35 at ¶ 12, J.R. 01182–183 (stating that "many consumers may not have this understanding" of strain-level designations, and that, therefore, "it is not surprising that certain consumer-focused marketing of probiotic dietary supplements may specify probiotic strains only at the genus and species level").

Given this, the undisputed material facts show that VSL cannot establish that the presence and use of the DSM Codes on Visbiome's packaging is false or misleading within the context of the Lanham Act.  *See Scotts*, 315 F.3d at 274 (holding that a court must determine "the unambiguous claims made by the advertisement" before determining whether those claims are false).  And so, the Court GRANTS the De Simone Parties' motion for summary judgment on this aspect of VSL's counterclaim, because VSL cannot prevail on its false advertising counterclaim based upon statements about strains deposited at the DSMZ.

### VSL Cannot Show That Statements That VSL#3 Contains Seven, Rather Than Eight, Strains Are Actionable

The undisputed material facts also show that VSL cannot prevail on its false advertising counterclaim based upon the De Simone Parties' statements that VSL#3 contains seven, rather than eight, strains.  VSL relies on several statements that the De Simone Parties allegedly made on this topic.

29

As an initial matter, VSL cannot rely upon the De Simone Parties' statements on this topic in a January 15, 2019, article entitled, "Note to Healthcare Professionals and Patients Regarding the Recent Jury Verdict[,]" because VSL could have pursued this aspect of its counterclaim in the related *Alfasigma* litigation. *See* ECF No. 125 at 30–31 n. 7. Notably, this statement was published three months before that litigation commenced and the Court has previously held with regard to other aspects of VSL's counterclaim that the doctrine of *res judicata* applies to "any claims based on correspondence or communications, including advertising, sent on or before April 16, 2019, which is the date of the Alfasigma complaint." ECF No. 41 at 56–57 (Aug. 17, 2021, Motion Hearing, Tr. 56:21–57:3).[5] The Court adopts the same reasoning with regard to the statement at issue here. VSL's reliance upon similar statements in a Vivomixx Article that was published on or about November 2017, is also misplaced, because this statement also pre-dates the *Alfasigma* litigation and the statement could have been argued in that litigation. And so, the Court agrees with the De Simone Parties that *res judicata* bars VSL's counterclaim based on this statement. ECF No. 120-1 at 49 (stating that "VSL#3 is no more VSL#3"); *see also* Ex. 40, J.R. 02092, VSL_EXEGI00001048.

The undisputed material facts also show that the remaining statements that VSL relies upon to support this aspect of its counterclaim are also not actionable under the Lanham Act. VSL next argues that the following two statements by the De Simone Parties, contained in an email dated July 23, 2023, are actionable under the Lanham Act: (1) that VSL#3 "contains bacteria that are qualitatively and quantitatively different" and (2) that VSL#3 is a "counterfeit product has been falsely marketed and promoted to the public and medical community." ECF No. 120-1 at 49. But the undisputed material facts show that VSL cannot establish that these statements were made in interstate commerce. *See Design Res.*, 789 F.3d at 501 (to prevail on a false advertising claim under the Lanham Act a plaintiff must show that "the Defendant placed the false or misleading statement in interstate commerce") (internal citations and quotations omitted).

Notably, it is undisputed that the correspondence at issue is a single email that was sent to one individual. ECF No. 149-7 (Ex. 106). VSL does not explain how this email could be a false

---

[5] Even if this claim were not precluded, the undisputed material facts show that VSL cannot show that the statements are false, because a careful reading of the January 15, 2019, Note makes clear that the De Simone Parties did not state that VSL#3 contains seven strains. Ex. 131, 63:3–65:17, 70:4–25, 83:9–15, 165:12–22, J.R. 05353–55, 05360, 05373, 05455.

statement placed in interstate commerce within the meaning of the Lanham Act. *See generally* ECF No. 120-1; *see also Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, No. 1:06-cv-1435-SEB-JMS, 2008 WL 4367554, at *5–6 (S.D. Ind. Sept. 18, 2008) (holding that a representation "made personally from Anodyne's sales representative to Nightingale personnel . . . is not grounds for a Lanham Act claim"). And so, VSL cannot prevail on this aspect of its counterclaim, because it cannot show that the statement at issue has been placed in interstate commerce.

Lastly, the undisputed material facts also show that VSL cannot prevail upon its false advertising counterclaim based upon a statement set forth the so called "*Curious History*" article. In this regard, VSL contends that the following statement in this article is actionable under the Lanham Act:

> [T]he Italian VSL#3 actually only contained 7 strains of bacteria, not the 8 contained in the original formulation.

ECF No. 120-1 at 49. But the unrebutted evidence shows that VSL does not put forward the full statement at issue. Rather, a careful reading of the article shows that the full statement provides as follows:

> A PhD level microbiologist and an expert on human gastrointestinal microflora concluded that, based on his genetic analysis of the new formulation, the Italian VSL#3 actually only contained 7 strains of bacteria, not the 8 contained in the original formulation.

ECF No. 148-34 at 8 (Ex. 93). When read in full, the Court does not read this statement to assert that Italian VSL#3 contains seven strains of bacteria, but rather that a microbiologist concluded that VSL#3 contains seven strains of bacteria. *See Scotts*, 315 F.3d at 275. The Court also observes that the parties agree that the expert on human gastrointestinal microflora in question, Dr. Gillevet, did in fact reach this conclusion. Ex. 132, 69:18–70:1, J.R. 05574–75; *see also De Simone*, 395 F. Supp. 3d at 625 (noting Dr. Gillevet's testimony that Italian VSL#3 "had only seven strains of live bacteria, not eight," and that he was "100%" certain of this conclusion). Given this, there is no genuine dispute that the subject statement is literally true. *See Scotts*, 315 F.3d at 274 (holding that a court must first determine "the unambiguous claims made by the advertisement," and then determine "whether those claims are false"). And so, VSL also cannot prevail on this aspect of its false advertising counterclaim.

31

<u>VSL Cannot Show That Statements ThatVSL#3 Is An "Imitation" Or "Knock Off" Are False</u>

The undisputed material facts show that VSL cannot prevail on its false advertising counterclaim based upon the De Simone Parties' statements that VSL#3 is an "imitation" or "knock off." The undisputed material facts show that the De Simone Parties' characterizations of VSL#3 are substantially true. In this regard, it is undisputed that VSL's CEO, Mr. Guarna, "acknowledged that Italian VSL#3 was the result of an attempt to reverse engineer the De Simone Formulation, and that the VSL Parties could not actually replicate the original." Ex. 16, J.R. 506-507; *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 250–51 (3d Cir. 2011) (where the operative facts are settled, the meaning of a term may be resolved as a matter of law). Given this concession, the Court agrees with the De Simone Parties that a reasonable jury could not find that these statements are actionable under the Lanham Act. *See Scotts*, 315 F.3d at 274 (holding that a court must first determine "the unambiguous claims made by the advertisement," and then determine "whether those claims are false"). And so, the Court GRANTS the DeSimone Parties' motion for summary judgment on VSL's false advertising counterclaim based upon the "imitation" or "knock off" statements.

<u>VSL Cannot Show That Statements That VSL#3 Has Been Discontinued Or Recalled Are False</u>

VSL's counterclaim based upon the De Simone Parties' statements that VSL#3 has been discontinued or recalled is also problematic. In this regard, VSL points to a statement in the January 23, 2023, Visbiome Web Capture, that provides that "VSL#3 is no longer available for sale at many retailers." ECF No. 120-1 at 59–60.

The evidence before the Court shows that many retailers ceased selling VSL#3 during this time period following the issuance of the Court's June 20, 2019, injunction related to VSL#3. For example, it is undisputed that Italian VSL#3 was not available for purchase at Costco stores throughout most of 2019 and 2020. ECF No. 141-16 at 5 (Ex. 139, ¶ 21, J.R. 5922); *see also* ECF No. 135-9 (Ex. 8, ¶ 7, J.R. 182); ECF No. 135-10 (Ex. 9, J.R. 251); ECF No. 135-21 (Ex. 20, J.R. 562, showing that a number of Alfasigma's key distributors and business partners stopped purchasing and selling VSL#3, some for several years). More importantly, to the extent that VSL correctly argues that VSL#3 was available for sale at numerous other retailers, ECF No. 139-1 (Guarna Decl. ¶¶ 33-34, Ex. 60, J.R. 03488), this fact does not negate the accuracy of the statement that "VSL#3 is no longer available for sale *at many retailers*." Given this, the

Court agrees with the De Simone Parties that VSL cannot show that the subject statement is false to prevail on its false advertising counterclaim.

There Are Material Facts In Dispute Regarding<br>
<u>The Statements That VSL#3 Lacks Clinical Studies That Preclude Summary Judgment</u>

VSL's false advertising counterclaim based upon certain statements that VSL#3 lacks clinical studies is, however, on firmer evidentiary footing.

The Court observes as an initial matter, that VSL cannot rely upon the statement in the January 15, 2019, Note to support this claim, because, as discussed above, the statement is preclude by the doctrine of *res judicata*. VSL's reliance upon the statement in a pamphlet, entitled "The True Story Behind Visbiome® & VSL#3," that VSL#3 is not supported by any "published, peer reviewed, controlled trials" is also not actionable, because this statement is literally true. Notably, it is undisputed that no published, peer-reviewed, controlled trial of the current VSL#3 existed as of that date in question. ECF No. 141-12 (Ex. 135, J.R. 5754-58). And so, the undisputed material facts show that this statement is not false.

But, the De Simone Parties have not shown that the statements in the June 25, 2019, Article entitled "*ExeGi Wins Court Rule Against VSL#3®, Permanent Injunction Blocks False Advertising to Doctors, Consumers*," stating that, "[o]n November 2018, a federal jury unanimously found in favor of the plaintiffs" and that "De Simone proved that . . . VSL launched their version of VSL#3, an untested imitation product," are not actionable under the Lanham Act. Notably, VSL points to evidence to show that these statements are false, because the current version of VSL#3 has been the subject of 45 peer-reviewed publications addressing its composition, safety and efficacy, since 2016. ECF No. 139-1 (Guarna Decl. ¶¶ 27-28, Ex. 60, J.R. 03487); ECF No. 140-11 (Ex. 110, J.R. 04792-4802). VSL also points to evidence to dispute the De Simone Parties' contention that the testing on VSL#3 was performed on the pre-2016 formulation of this product. ECF No. 139-1 (Guarna Decl. ¶ 28, Ex. 60, J.R. 03487); ECF No. 140-12 (Ex. 111). And so, a jury must decide whether the statements at issue are false. *See Scotts*, 315 F.3d at 273 (if a statement is literally false, materiality may be presumed).

VSL also advances evidence to show that the statements at issue actually deceived, or had the tendency to deceive, a substantial segment of its audience. *Design Res.*, 789 F.3d at 501. As discussed above, Dr. Goodstein will present testimony and opinions regarding his surveys of

the clinical-studies representation to assess the impact of these statements on consumers. ECF No. 118 at 9.

VSL has also shown that it can advance evidence to show that the De Simone Parties "placed the false or misleading statement in interstate commerce." *Design Res.*, 789 F.3d at 501 (4th Cir. 2015). As discussed also above, it is undisputed that the June 25, 2019, Article that contains these statements was published and disseminated as commercial advertising and, thus placed in interstate commerce. *See, e.g.*, ECF Nos. 105-1 and 125. There is also evidence before the Court to show that VSL can establish that it "has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Design Res.*, 789 F.3d at 501 (internal quotation omitted). Notably, VSL points to evidence showing its lost sales and diminished goodwill, that a reasonable jury could rely upon to find "an injury to a commercial interest in sales or business reputation proximately caused by the [De Simone Parties'] misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). Given this, a reasonable jury could find in favor of VSL with regards to its false advertising counterclaim, based upon the statements in the June 25, 2019, Article. And so, the Court DENIES the De Simone Parties' motion for summary judgment with regard to this part of VSL's false advertising counterclaim.

VSL also points to evidence to support the elements of its false advertising counterclaim based upon the statement in the *Curious History* article that VSL#3® is an "imitation formula" which has "not been the subject of any human clinical trial . . . as of the publication of this white paper." ECF No. 139-1 (Guarna Decl. ¶¶ 27–28, Ex. 60, J.R. 03487); ECF No. 140-11 (Ex. 110, J.R. 04792-4802). While the De Simone Parties argue that this statement is true and nonactionable under the Lanham Act, VSL points to the sworn declaration of Luca Guarna, to show that the current version of VSL#3 has been the subject of 45 peer-reviewed publications addressing its composition, safety and efficacy since 2016. ECF No. 139-1 (Guarna Decl. ¶¶ 27–28, Ex. 60, J.R. 03487); ECF No. 140-11 (Ex. 110, J.R. 04792-4802); *see Scotts*, 315 F.3d at 273 (if a statement is literally false, materiality may be presumed). VSL also advances evidence to show that the statement at issue deceived consumers, because VSL relies upon Dr. Goodstein surveys and related expert testimony on this topic. ECF No. 136-5 at 99–100 (Goodstein Opening Report, Ex. 35, ¶¶ 147–149, J.R. 01272–73).

In addition, it is undisputed that the *Curious History* article was disseminated in a manner sufficient to constitute commercial advertising placed in interstate commerce, and that this statement remains available on the Visbiome website. *See, e.g.*, ECF No. 120-1 at 45 and 55. Lastly, VSL advances evidence to show that it "has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products," because VSL provides evidence of its lost sales and diminished goodwill, that is sufficient to permit a reasonable jury to find the De Simone Parties proximately caused injury. ECF No. 135-11 at 25, 26 and 27  (June 4, 2024, Stephen Androcy Dep. Tr. 26:20-22; 27:1-22; 28:1-11, Ex. 10, J.R. 00320-321)

VSL has similarly shown that summary judgment is not warranted on its false advertising claim based upon the De Simone Parties' statement in response to a consumer question in an Amazon product review that "VSL #3 does not contain the same stains or the same strain rations and has no clinical documentation." ECF No. 140-18 (Ex. 109, J.R. 04789).  This statement asserts, without any limitation, that VSL#3 "has no clinical documentation." *Id.*  There is also a material dispute of fact regarding the meaning of "clinical documentation" in this case.  ECF No. 139-1 (Guarna Decl. ¶ 27, Ex. 60, J.R. 03487).  And so, for the reasons previously stated with regards to the remaining elements VSL persuasively argues that the jury should resolve this aspect as well of its counterclaim.

For the above reasons, the De Simone Parties have shown that they are entitled to summary judgment on VSL's Lanham Act-false advertising counterclaim with regards to all of the alleged false statements, with the exception of the statements that VSL#3 lacks clinical studies contained in the June 25, 2019, Article, the *Curious History* article and the Amazon Product Review.  And so, the Court GRANTS the De Simone Parties' motion for summary judgment on VSL's counterclaim for all statements, except the statement that VSL#3 lacks clinical studies as contained in the June 25, 2019, Article, the *Curious History* article and the Amazon Product Review.

### 2.    ExeGi It Is Entitled To Summary Judgment On Its Declaratory Judgment Claim

Turning to the De Simone Parties' motion for summary judgment on ExeGi's declaratory judgment claim, VSL appears to concede that summary judgment is warranted in ExeGi's favor on this claim.  ECF No. 125 at 7 n. 3.  Pursuant to the Declaratory Judgment Act, the Court may

"declare the rights and other legal relations of any interested party" in "a case of actual controversy within its jurisdiction," 28 U.S.C. § 2201(a), and the Court is afforded discretion in determining whether to render such relief. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). And so, declaratory relief is appropriate where the complaint presents "an actual controversy between the parties of sufficient immediacy and reality[;]" the Court has an independent basis for jurisdiction; and where the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity[] and controversy giving rise to the proceeding." *Proa v. NRT Mid Atlantic, Inc.*, 477 F. Supp. 2d 677, 680 (D. Md. 2007) (internal quotations omitted); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (internal quotations omitted).

In this case, there is an actual controversy between the parties about whether ExeGi may continue to use the DSM Codes, because it is undisputed that VSL sent a series of letters to ExeGi's suppliers and distributors stating that ExeGi had "no right to continue using [the] DSM Codes[,]" and that ExeGi's use of the codes constituted false advertising, because such use suggested that ExeGi has "ownership of and access to the DSMZ accounts." ECF No. 105-1 at 47–48. It is also undisputed that VSL threatened litigation, demanded that ExeGi cease its use of the DSM Codes and urged ExeGi's suppliers and distributors to abandon their business relationships with ExeGi. *Id.*; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

There can also be no genuine dispute that the Court has an independent basis for exercising jurisdiction over this dispute, because the Court possesses subject-matter jurisdiction to resolve the claims and counterclaims asserted in this case. The exercise of the Court's discretion to grant the requested declaratory relief is also warranted here, because the Court is satisfied that a declaration about ExeGi's right to use the DSM Codes in connection with Visbiome will clarify that issue and resolve the parties' ongoing dispute about ExeGi's use of these codes in connection with the marketing and sale of Visbiome. And so, the Court GRANTS the De Simone Parties' motion for summary judgment on ExeGi's declaratory judgment the claim. Fed. R. Civ. P. 56.

**E.     The Court Grants-in-Part And
            Denies-in-Part VSL's Motion For Summary Judgment**

The Court next considers VSL's cross-motion for summary judgment on the De Simone Parties' tort claims arising from certain letters sent by VSL's litigation counsel.  For the reasons that follow, the Court GRANTS-in-PART and DENIES-in-PART this motion.

As an initial matter, while this is a somewhat close issue, the Court is not convinced that Maryland's absolute litigation privilege bars ExeGi's tortious interference and unfair competition claims, as VSL suggests.  To show that the litigation privilege bars these claims, VSL must show, among other things, that the letters that VSL's litigation counsel sent to Danisco, Pharma Holdings and Amazon, bear a rational relationship to litigation that VSL contemplated in good faith and under serious consideration.  *Norman v. Borison*, 418 Md. 630, 658, 17 A.3d 697, 713 (2011) (quoting Restatement (Second) of Torts § 588 cmt. e and holding that, for an out-of-court statement made in anticipation of litigation to receive the privilege, the statement must relate to a judicial proceeding that is "actually contemplated in good faith and under serious consideration").  While VSL correctly observes that the letters at issue are from its litigation counsel and generally reference litigation and potential claims that VSL could bring against the recipients, there is no evidence before the Court to clearly show what motivated VSL's litigation counsel to send these letters.  *See, e.g.,* ECF No. 125 at 15–20 (ExeGi arguing that the subject letters misstate the holding of the Court of Rome and were sent in bad faith, and so a factfinder could conclude that no judicial proceeding was contemplated in good faith when VSL's counsel sent the letters).  Notably, there is a long and well-documented history of the disagreement and competition between the parties in this case related to the marketing of VSL#3 and Visbiome.

Given this, the Court is not convinced that the undisputed material facts show that the litigation privilege applies to the subject letters.  And so, the Court DENIES VSL's motion for summary judgment on this issue.  Fed. R. Civ. P. 56.

The Court also need not determine whether the litigation privilege apples to ExeGi's tort claims, because VSL convincingly argues that the undisputed material facts show that ExeGi cannot establish that it suffered any damages as a result of the letters, to prevail on these claims.  To prevail on its tortious interference and unfair competition claims, ExeGi must show, among other things, that it suffered damages as a result of the letters from VSL's litigation counsel.  *See Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 703 (D. Md. 2011) (holding

37

that, under Maryland law, a claim for tortious interference with a business relationship requires, among other things, "actual damage and loss resulting" from the defendant's conduct) (internal quotation omitted); *M-Edge Accessories LLC v. Amazon.com Inc.*, 2015 WL 403164, at *4 (D. Md. Jan. 29, 2015) (holding that an essential element of common law unfair competition is that the alleged misconduct "damaged or jeopardized" the plaintiff's business) (internal quotation omitted). And so, ExeGi must put forward evidence to show that these letters caused it damage, to survive VSL's motion for summary judgment. ExeGi has not done so here.

Notably, it is undisputed that Danisco continued to manufacture Visbiome after receiving a letter from VSL's litigation counsel. It is also undisputed that Pharma Holdings and Amazon continued to sell Visbiome after receiving similar letters from VSL's litigation counsel.

There is also no dispute that ExeGi fails to offer any expert testimony to explain how, and to what extent, it was damaged by the letters from VSL's litigation counsel. In fact, ExeGi's damages expert has declined to offer such an opinion in this case. ECF No. 103 at 36 (Callahan Dep. at 20:1-3, Ex. 141, J.R. 06060). Without such expert testimony, ExeGi cannot quantify any of its alleged lost sales attributable to the letters, or otherwise demonstrate that the letters caused it economic harm. *See First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 F. App'x 229, 236 (4th Cir. 2016); *KVC Waffles Ltd. v. New Carbon Co.*, 2022 WL 2919677, at *8 (D. Md. July 22, 2022); *Contech Stormwater Sols., Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 632 (D. Md. 2008).

ExeGi's arguments to show that it can establish damages to support these tort claims are also unconvincing. ExeGi first argues that it may recover damages under the collateral litigation doctrine. ECF No. 125 at 17–18. But, Maryland courts have held that the collateral litigation doctrine is "limited to instances where the defendant's wrongful conduct forced a plaintiff into collateral litigation involving a party other than the defendant." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 400, 250 A.3d 197, 225 (2021). That is not the case here, because ExeGi is the party that commenced this litigation.

ExeGi also cannot rely upon its request for punitive damages to satisfy the damages element of its claims, because an award of compensatory damages is a necessary prerequisite to an award of punitive damages under Maryland law. *Shell Oil Co. v. Parker*, 291 A.2d 64, 71 (Md. 1972); *see also Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1234 (Md. Ct. Spec. App. 2005) ("[T]here must be a compensatory damages award foundation for each count of a

38

complaint that provides a basis for punitive damages.") (internal quotation omitted).  In addition, the attorneys' fees that ExeGi seeks as an element of its punitive damages claim do not negate the need for ExeGi to first establish that it is entitled to compensatory damage in connection with its tort claims.

Given these concerns, VSL has shown that ExeGi cannot satisfy the damages element of its tortious interference and unfair competition claims.  And so, the Court GRANTS VSL's motion for summary judgment on these claims.  Fed. R. Civ. P. 56.

**F.    The Court Declines To Sanction VSL**

As a final matter, the Court must DENY the De Simone Parties' motion for sanctions against VSL, pursuant to Fed. R. Civ. P. 11.  Pursuant to Rule 11 of the Federal Rules of Civil Procedure, a factual contention is sanctionable when it is "unsupported by any information obtained prior to filing[,]" *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (internal quotation omitted), and a legal position is sanctionable when it has "absolutely no chance of success[,]" *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (internal quotation omitted).  And so, Rule 11 sanctions are not warranted when there are "good-faith disagreements about the factual record or the law." *Kennedy v. NYX Ent., Inc.*, 2025 WL 3017226, at *7 (D. Md. Oct. 28, 2025) (internal quotation omitted).

In their motion for sanctions, the De Simone Parties argue that VSL violated Rule 11 in this litigation, because VSL asserted, and continued to prosecute, false advertising counterclaims against Professor De Simone, without any factual or legal basis, and for an improper purpose. ECF No. 102 at 1.  But, it is undisputed that, at the time that VSL filed its amended counterclaim, Professor De Simone owned a majority interest in ExeGi's.  ECF No. 43 at ¶ 7.  It is also undisputed that VSL based its false advertising counterclaim, in part on statements attributable to Professor De Simone that were found on Visbiome's website, as well as emails that Professor De Simone personally sent.  ECF No. 117 at 3, 10–11.  Given this, there was at a minimum, a factual basis for VSL's decision to include Professor De Simone in its Lanham Act-false advertising counterclaim when that pleading was filed.  While the De Simone Parties understandably dispute the significance and extent of Professor De Simone involvement in making these statements, this disagreement reflects a genuine, good-faith disagreement between the parties about the factual record in this case. *See Hunter*, 281 F.3d at 153; *Kennedy*, 2025 WL 3017226, at *7.

39

Given this, the De Simone Parties have not demonstrated that VSL's counterclaims against Professor De Simone were so lacking in factual or legal support, or so improperly motivated, as to warrant the imposition of sanctions under Rule 11. And so, the Court DENIES the De Simone Parties' motion for sanctions. Fed. R. Civ. P. 11.

## IV. CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** the DeSimone Parties' motion to exclude the opinions of Dr. Barrangou (ECF No. 101);

(2) **DENIES** the De Simone Parties' motion to exclude the opinions of Dr. Goodstein (ECF No. 104);

(3) **DENIES** VSL's motion to exclude the opinions of Mr. Tewey (ECF No. 116);

(4) **GRANTS-in-PART** and **DENIES-in-PART** the DeSimone Parties' motion for summary judgment (ECF No. 105) and **ENTERS JUDGMENT** in favor of ExeGi on Count I of the complaint;

(5) **GRANTS-in-PART and DENIES-in-PART** VSL's motion for summary judgment as (ECF No. 120) and **ENTERS JUDGMENT** in favor of VSL on Counts II and III of the complaint; and

(6) **DENIES** the De Simone Parties' motion for sanctions (ECF No. 102).

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

40